IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOLIE STEWART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2554-N |
| | § | |
| KAUFMAN COUNTY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Kaufman County's motion to dismiss [24].  For the reasons stated below, the Court partially grants and partially denies Kaufman's motion to dismiss.

### I. ORIGINS OF THE MOTION

This case arises from Plaintiff Jolie Stewart's employment with Kaufman County. Stewart is a white woman.  Pl.'s Am. Compl. ¶ 6 [17].[1]  She worked as a peace officer for twenty-two years, and Kaufman County promoted her to the rank of captain.  *Id*. ¶¶ 7. Stewart alleges that, while employed by Kaufman County, Bryan Beavers and Billy Valentine retaliated against her after she engaged in free speech opposing racial discrimination in the workplace.  *Id*. ¶¶ 13–14, 36.  Beavers is Kaufman County's Sheriff and Valentine is a Deputy Chief. *Id*. ¶¶ 9, 13.

---

[1] For purposes of this Order, the Court accepts Stewart's well-pleaded allegations as true.

MEMORANDUM OPINION AND ORDER – PAGE 1

Beginning in 2023, Beavers allegedly treated Stewart differently than employees who had not engaged in free speech opposing discrimination in the workplace, including a negative change in his communications with her and undercutting Stewart's command management. *Id*. ¶¶ 28–31. Stewart asserts two claims, one under Title VII of the Civil Rights Act of 1964 and one under *Monell*. 42 U.S.C. § 2000e–2(a)(1); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Stewart's complaint alleges that Kaufman County engaged in racial discrimination. Janet Freeman, an African-American criminal investigator under Stewart's command, complained to her that Valentine denigrated Freeman's chances of promotion and, ultimately, denied Freeman a promotion based on his openly unlawful racial animus. *Id*. ¶¶ 13–15. Specifically, Valentine verbally implied at Freeman's promotion interview that Freeman could not perform her job because she is an African American. *Id*. ¶ 14. Stewart also alleges that Valentine has a pattern of racial animus towards Black individuals and provides specific examples demonstrating this intent. *Id*. ¶ 18.

Based on this knowledge, Stewart decided to accompany Freeman to a meeting with Beavers. *Id*. ¶ 22. At that meeting, Stewart voiced her opposition to Valentine's racially discriminatory conduct and supported Freeman's complaint. *Id*. ¶ 23. At the meeting, Beavers appeared to be uncomfortable and it seemed that he would not respond to Freeman and Stewart's complaints. *Id*. ¶¶ 26–27.

Immediately after, Beavers refused to engage with Stewart the way he did before she complained to him about the racial discrimination. *Id*. ¶ 29. His lack of communication made it impossible for Stewart to perform her job, which required regular weekly, if not

MEMORANDUM OPINION AND ORDER – PAGE 2

daily, communication with him to carry out his policies, orders and directives. Other deputies in Kaufman County also told Stewart that Beavers began to gauge their interest in becoming a captain, implying that he intended to replace Stewart. *Id*. ¶ 30.

Then, both Beavers and Valentine began communicating directly with Stewart's subordinates "as if she did not exist, effectively isolating her from her own command." *Id*. ¶ 31. Subsequently, Stewart filed a formal grievance with Kaufman County's human resources ("HR") department. She complained that Beavers ostracized her within the Sheriff's Office in retaliation for her speaking up about racial discrimination within Kaufman County. *Id*. ¶ 32. Then Kaufman County's district attorney interviewed Stewart extensively about her grievance. *Id*. ¶ 33. Stewart alleges that the interview caused Beavers to become aware that Stewart filed a grievance. *Id*.

In 2023, Stewart took leave for a surgical procedure through the Family and Medical Leave Act ("FMLA"). *Id*. ¶ 34. After Stewart returned on October 6, 2023, Beavers terminated her employment on that same day. *Id*. ¶ 35. Kaufman County now moves to dismiss both of Stewart's claims.

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual

MEMORANDUM OPINION AND ORDER – PAGE 3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III.  STEWART PLEADS A TITLE VII RETALIATION CLAIM

The Court concludes that Stewart adequately pleads a claim for retaliation. To state a claim for retaliation in violation of Title VII, a plaintiff must allege that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007) (citations omitted).

#### A.    *Stewart Plausibly Alleges She Engaged in Protected Activity*

Protected activity under Title VII can take one of two broader forms: (1) opposing an unlawful employment practice; or (2) making a charge, testifying, assisting, or

MEMORANDUM OPINION AND ORDER – PAGE 4

participating in a Title VII investigation, proceeding, or hearing.  *Byers v. Dallas Morning News*, 209 F.3d 419, 427–28 (5th Cir. 2000).

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII . . . ."  *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted).  To sufficiently allege opposition, [a plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citation omitted).  Stewart alleges she participated in protected activity by speaking up against discrimination on behalf of her coworker.

First, Stewart alleges that she "accompanied Freeman" to a meeting with Beavers.  Pl.'s Am. Compl. ¶ 22.  There, Stewart voiced her opposition to what she believed was unlawful conduct under Title VII.  Specifically, Stewart opposed Valentine's racially discriminatory conduct and spoke in support of Freeman's complaint.  *Id*. ¶ 23.

Second, Stewart alleges she spoke separately with both HR and the county's district attorney to file a grievance.  *Id*. ¶ 32–33.  At those meetings, she detailed how Beavers ostracized her as a result of the complaint she made to him about what she believed were unlawful racially-motivated acts.  *Id*.

Stewart sufficiently alleges she had a reasonable belief that Kaufman County, through Beavers and Valentine, engaged in unlawful employment practices and that she opposed the practices by speaking up for Freeman.  Pl.'s Am. Compl. ¶¶18, 21.  This misconduct includes Valentine asking racially-motivated questions during Freeman's promotional interview.  *Id*. ¶ 14.  Stewart is also aware that Valentine allegedly has a

MEMORANDUM OPINION AND ORDER – PAGE 5

history of racial animus towards Black individuals.  He has threatened an African American citizen who wanted to make a complaint against the Sheriff's Office and he has used more force than necessary against Black citizens, in one instance throwing a Black man out of a window.  *Id*. ¶ 18.

Thus, Stewart's alleged instances of opposition are sufficient to plausibly establish that she had a reasonable belief of unlawful conduct and that she engaged in protected activity when she spoke up on Freeman's behalf.  *See Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp. 2d 570 (N.D. Miss. 2011) (holding employee's willingness to testify in former co-worker's lawsuit was protected activity for purposes of retaliation claim); *Faulk v. Shinseki*, 216 F. Supp. 3d 752 (W.D. La. 2016) (holding a white employee established a prima facie case Title VII retaliation case based on allegations that she had opposed racial discrimination against Black co-workers).

### B.     *Stewart Sufficiently Alleges an Adverse Employment Action*

Stewart plausibly alleges that she suffered an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Stewart alleges her interactions with Beavers "took a dramatic turn," Beavers ostracized her, she suffered a reduction in authority, and Beavers terminated her.  Pl.'s Am. Compl. ¶¶ 28, 30–31, 35. These actions would reasonably dissuade a reasonable employee from reporting discrimination.  *E.g.*, *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 501 (5th Cir. 2023) (en banc) ("Title VII plaintiff may recover damages even for "discrimination in the 'terms,

MEMORANDUM OPINION AND ORDER – PAGE 6

conditions, or privileges of employment' " that "did not involve a discharge," "loss of pay," or other "concrete effect on [his or her] employment status.").

### C.    *Stewart Plausibly Alleges a Causal Connection*

Stewart alleges several facts to demonstrate Kaufman County had knowledge of her protected activity and a causal connection.  Stewart alleges Beavers acted out of character during their meeting where she called out the racial discrimination against Freeman.  *See* Pl.'s Am. Compl. ¶ 26.    Then, immediately after, Beavers treated her completely differently, and more negatively than he did before, including by isolating her from her command.  *Id*. ¶ 28  In addition, Stewart alleges facts that plausibly show that, in the time leading up to her dismissal, Beavers sought to replace her and worked in a manner that isolated Stewart from her command.  *Id*. ¶ 31  Then, Beavers learned about Stewart's HR complaint and interview with the district attorney and fired her upon her return.  *Id*. ¶ 35 Although there was a time gap between her opposition and her termination, Stewart explains the brief gap of a few months was because she had surgery and took FMLA protected leave.  *Id*.

These facts state a plausible connection between Stewart's opposition and the alleged retaliation.  *Cf. Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) ("Specifically, there were no facts alleged to suggest that those responsible for hiring decisions knew about any of the grievances [plaintiff] filed."); *Outley v. Luke & Assocs.,*

*Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (finding two months sufficiently close in time to establish causal connection).

Accordingly, the Court denies Kaufman County's motion to dismiss Stewart's Title VII retaliation claim.

### IV. STEWART FAILS TO PLEAD A FIRST AMENDMENT *MONELL* CLAIM

In order to plead a *Monell* claim for municipality liability, Stewart must first have a cognizable constitutional claim.  Stewart alleges Kaufman County violated her First Amendment speech rights.  Thus, the Court first analyzes whether Stewart has a cognizable First Amendment case before addressing *Monell*.

#### A.      *Lawrence Fails to Allege a First Amendment Retaliation Claim*

Lawrence fails to plausibly allege that she spoke as a citizen on a matter of public concern.  "Speech made pursuant to a public employee's official duties is generally not protected."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  In determining whether an employee was speaking as part of his duties or had stepped outside that role to speak as a citizen and thus receive First Amendment protection, courts consider "factors such as job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally."  *Rogers v. City of Yoakum*, 660 F. App'x 279, 283 (5th Cir. 2016) (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).

Here, the Court could distinguish her speech during the meeting with Beavers from her comments made pursuant to her official duties as a peace officer.  For example, her duties only "require" her to "direct Freeman to take her complaint to Sherrif [sic] Beavers"

MEMORANDUM OPINION AND ORDER – PAGE 8

and to communicate with Beavers on a daily basis.  Pl.'s Am. Compl. ¶¶ 19, 29.  Stewart alleges that attending the meeting was not part of her responsibilities as a supervisor, because "she had no authority, duty, responsibility or obligation to be present at that meeting."  *Id*. ¶ 24; *compare Williams v. Riley*, 275 F. App'x. 385, 389 (5th Cir. 2008) (finding instances where speech is outside "an employee's official job duties at a reasonable sheriff's department [that] would include reporting crimes perpetrated at work by department members") *with Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 578 (N.D. Tex. 2012), *aff'd sub nom. Petrie v. Salame*, 546 F. App'x 466 (5th Cir. 2013) (finding plaintiff was not speaking as an officer when plaintiff spoke with his supervisor after hours at the police department office, was not in uniform, and announced that he was not meeting in his capacity as an official).

Next, Stewart's speech was internal to her supervisors, namely Beavers, and HR employees.  These facts weigh in favor of finding that this speech was part of her duties. *Anderson v. Valdez*, 845 F.3d 580, 596 (5th Cir. 2016); *see also Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) (holding that statements to "external, unrelated entities" were protected where it was "not within [employee's] job function to communicate with outside police authorities" and such communications had not happened in the past).

Separately, Stewart also communicated with the district attorney but it is unclear how or in what capacity Stewart spoke in that instance.  Taking Stewart's allegations in the light most favorable to her, this factor weighs in favor of finding her speech outside of her official duties. *See id*.  However, this factor is not dispositive at the pleadings stage. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999).

MEMORANDUM OPINION AND ORDER – PAGE 9

Finally, Stewart's speech came at least partly from special knowledge she acquired through her job.[2]  She was acting as a supervisor of Freeman, a criminal investigator working under her, when she learned about Valentine's racial comments.  Based on these factors, Stewart's allegations do not allow the Court to reasonably infer that she spoke as a citizen on a matter of public concern.

Because Stewart fails to allege speech protected by the First Amendment, she has not plead a cognizable constitutional claim.  Thus, Stewart's *Monell* claim fails at this threshold step.

### B. Stewart Fails to Plausibly Plead Monell Liability

Even assuming arguendo that a cognizable First Amendment violation occurred, Stewart fails to plausibly allege a First Amendment *Monell* claim.  "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy [or custom]; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  However, a municipality cannot be held liable solely on a respondeat-superior theory.  *Monell*, 436 U.S. at 691.

---

[2] Stewart's states Valentine's threats to an African-American citizen can be seen in a publicly aired video.  Pl.'s Am. Compl. ⁋ 18.  However, she does not mention how she specifically came to know about that incident or his use of force throwing another citizen.  Thus, the Court cannot conclude whether these facts are special knowledge she obtained as an employee.

MEMORANDUM OPINION AND ORDER – PAGE 10

Regarding a policy, the Supreme Court has explained that a governmental entity —
such as Kaufman County — may not be held liable under section 1983 "unless action
pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*,
436 U.S. at 691. In the section 1983 context, the Fifth Circuit has described "[o]fficial
policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially
> adopted and promulgated by the municipality's lawmaking officers or by an
> official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which,
> although not authorized by officially adopted and promulgated policy, is so
> common and well settled as to constitute a custom that fairly represents
> municipal policy. Actual or constructive knowledge of such custom must be
> attributable to the governing body of the municipality or to an official to
> whom that body had delegated policy-making authority. Actions of officers
> or employees of a municipality do not render the municipality liable under §
> 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir.
1984). "The description of a policy or custom and its relationship to the underlying
constitutional violation, moreover, cannot be conclusory; it must contain specific facts."
*Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (internal
citations omitted)).

Stewart does not allege the first type of policy. "To proceed beyond the pleading
stage, a complaint's description of a policy or custom and its relationship to the underlying
constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v.
City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018). Here, Stewart has not alleged any
type of written policy, ordinance, or regulation at all.

MEMORANDUM OPINION AND ORDER – PAGE 11

Stewart also does not allege a custom.  Stewart alleges only this incident and has not pleaded that Kaufman County fired any other employee because of their speech.  As such, Stewart fails to allege a "persistent, widespread practice" that is "common and well settled to constitute a custom."  *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("[O]ne act is not itself a custom.  There must be a "persistent and widespread practice."); *cf. City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Because Stewart fails to state a claim under the first two elements of *Monell*, the Court declines to address the remaining elements.  Accordingly, the Court dismisses the *Monell* claim and grants Stewart leave to amend her pleadings.

CONCLUSION

Because Stewart fails to plead allegations supporting a policy or custom and that she spoke as a citizen on a matter of public concern, Stewart fails to state a plausible *Monell* claim.  The Court grants Stewart leave to amend her *Monell* claim.  Finally, for the foregoing reasons, the Court denies Kaufman County's motion to dismiss Stewart's remaining claims for Title VII retaliation.

Signed July 22, 2026.

David C. Godbey
Senior United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 12